ANDRÉS ALVARADO, Plaintiff and Appellee, *v.* ANTONIO BONILLA, Defendant and Appellant.

No. 15. Decided November 15, 1962.

*Antonio Reyes Delgado* and *Ángel E. Rosa* for appellant.  *Dennis Martínez Irizarry, Rodríguez Ema & Rodríguez Ramón, Rafael A. Escudero, Rodolfo Sequeira,* and *Nicolás Jiménez* for appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

In March 1948 Demetrio Comulada acquired by purchase a rural farm consisting of approximately five cuerdas of land, located in the ward of Caimitos in Río Piedras, having two structures of wood and zinc.  By private deed of July 23, 1952, Comulada bound himself to sell the aforesaid farm to Andrés Alvarado within the term of two years for the price of $16,000 payable in the following manner: $5,000 in cash and the remaining $11,000 in the term of 10 years.  It was further agreed in said deed that until his option was exercised, Alvarado would be in possession of the farm as lessee paying a monthly rate of $106, and during the term of the option Alvarado would have the right to make all kinds of improvements and investments in the farm, but that in case the option were not exercised, or the rentals were not paid, he would have to vacate the farm and Comulada would be obliged to pay him the price of the improvements and investments, but never a sum greater than $5,000 on that account.  By virtue of this contract Alvarado made improvements and investments in the farm.

By deed No. 1 executed in Río Piedras, Puerto Rico, on April 26, 1954 before Notary E. L. Belén Trujillo, Alvarado and Comulada cancelled the agreement of option for purchase and the former sold to the latter the improvements which he had made in the farm for the price of $5,000. In that same deed No. 1, Comulada sold the farm to Antonio Bonilla for the price of $16,000 of which the purchaser paid $5,000 in cash and the remaining $11,000 were extended for a year and guaranteed by a first mortgage on the property sold.

By deed No. 2, also executed on April 26, 1954, before the same Notary Belén Trujillo, the purchaser Antonio Bonilla guaranteed with a first mortgage on a farm of his property located in Arecibo, a promissory note which he had issued to bearer for the sum of $17,000.

In October 1954 Alvarado filed an action for recovery of money against Antonio Bonilla. In the amended complaint he alleged in brief, that in spite of what was recorded in deed No. 1 of April 26, 1954 executed before Notary E. L. Belén Trujillo, "the truth is that the parties, before going to the Notary, had agreed that defendants would deliver plaintiff a mortgage note for $17,000 which expired on October 1, 1954 on defendant's farm in Arecibo, which was the price assessed for the improvements on plaintiffs' farm and house . . . ;" that the sale of said improvements to Comulada was fictitious and that it was made to facilitate the transaction; that on the same April 26, 1954 a note for $17,000 was executed by defendant in favor of the bearer who agreed to record it in the Registry of Property and that he would deliver it to plaintiff as evidence of the debt, something which he never did; that in June 1954 he cancelled the aforesaid note; that defendant has always acknowledged his debt but that he has never paid it.

Defendant answered denying the essential facts except that he admitted to have executed the note for $17,000 for the purpose of raising funds to pay the price of $16,000 for the farm, which was unnecessary once the vendor accepted

to defer $11,000 for a year, for which reason he proceeded to cancel the aforesaid note. He alleged that the oft-mentioned deed No. 1 reflects the actual transaction executed between the parties and that plaintiff was legally estopped from claiming a sum which he had already collected. Besides, he counterclaimed.

The trial court rendered judgment sustaining the complaint after making the following findings of fact:

"1. At the beginning of the year 1954, defendant Antonio Bonilla, on his own behalf and through José Carbonel and Eduardo Dávila had been taking steps for the purpose of acquiring a rather small rural farm in the outskirts of Río Piedras in order to devote it to his business of buying and selling used automobile parts and machinery, and surplus war materials.

"2. On April 16, 1954 (Good Friday) defendant Antonio Bonilla accompanied by his wife, Eduardo Dávila, and José Carbonel visited plaintiff Andrés Alvarado at his residence on kilometer 17, hectometer 3, on insular road No. 1, leading to Caguas from Río Piedras, and talked during the whole afternoon about a possible purchase of a property located in the aforesaid place. During the time these gentlemen were in the residence of plaintiff Andrés Alvarado, defendant Antonio Bonilla had the opportunity to examine, and he actually did examine the farm as well as the house where Alvarado resided without reaching any agreement because Alvarado asked for the farm and structure where he resided and conducted his business, the price of forty thousand dollars, which he later reduced to thirty-five thousand dollars, when Antonio Bonilla made an offer of only thirty-two thousand dollars.

"3. In the morning of the following day, José Carbonel in the name of defendant Bonilla, visited Andrés Alvarado and informed him that defendant Antonio Bonilla was willing to pay the sum of Thirty-Three Thousand Dollars for the property, a sum which was accepted by plaintiff Andrés Alvarado as the selling price.

"4. The aforesaid property belonged at that time to Demetrio Comulada, who had acquired it by deed No. 6 executed on March 11, 1948, before Notary Benjamín Rodríguez Ramón. Said farm is described as follows:

'RURAL: Piece of land in the ward of Caimitos of Río Piedras, consisting of approximately five cuerdas equivalent to one hectare, ninety-six ares and fifty centiares. On the north and east it is adjacent to the creek de la Cruz; on the south, to the property of Carlos Blondet; and on the west, to the central road. On the aforesaid lot there is a zinc-roofed, one-story house made of imported wood, and another house used for a store.'

"5. Said farm was occupied by plaintiff Alvarado by virtue of a private document entitled Agreement of Option of Sale dated July 23, 1952, by virtue of which Alvarado came into its possession. In said agreement Demetrio Comulada bound himself to sell to Andrés Alvarado the aforesaid farm within the term of two years starting from the date of the document for the agreed price of $16,000, said amount to be paid in the following manner: $5,000 in cash and the remaining $11,000 to be paid in the term of 10 years from the date of execution of the corresponding deed. It was also provided in said document that until Alvarado exercised the option, he would be in possession of the farm as lessee paying a monthly rate of $106 for past due rentals, and that during the term of the option Alvarado would have the right to make all kinds of improvements and investments, but that in case the option were not exercised, Alvarado would have to vacate the farm immediately and Comulada would not be bound to pay Alvarado despite his investments not more than $5,000 by way of the aforesaid improvements and investments. By virtue of this contract plaintiff Andrés Alvarado made improvements and investments in the property.

"6. In the last week of April 1954 Andrés Alvarado, Antonio Bonilla, Demetrio Comulada, José Carbonel, and Eduardo Dávila visited the house of E. L. Belén Trujillo located in Brumbaugh Street No. 355 in Río Piedras, and Bonilla, Comulada, and Alvarado explained to Lic. E. L. Belén Trujillo that they were interested in executing a deed of sale from Comulada to Bonilla as to the farm in question, where plaintiff Alvarado resided, pointing out to the Notary that the selling price would be $16,000 payable $5,000 in cash and $11,000 in a mortgage on the same property. They also explained that in this same document it would have to be recorded that Andrés Alvarado was waiving the option of sale that he had over that property and that he was selling the improvements and investments on the

latter to Comulada for the sum of $5,000. On that same occasion defendant Bonilla instructed Lic. E. L. Belén Trujillo to issue a mortgage note in favor of the bearer for the sum of $17,000 on a farm of his property located in the municipality of Arecibo.

"7. On April 26, 1954, in the residence of plaintiff Andrés Alvarado, the parties signed the deeds Nos. 1 and 2 of Notary of E. L. Belén Trujillo, for the sale and issuance of a mortgage note to the bearer.

"8. At the same place, defendant Antonio Bonilla told plaintiff in the presence of the notary, that if he accepted fifteen thousand dollars within one month, there would be no need to record the deed as to the note, but Andrés Alvarado did not accept this.

"9. Several days later defendant Bonilla and Carbonel visited Lic. E. L. Belén Trujillo, as to a note relative to the farm that Comulada left in the care of Lic. E. L. Belén Trujillo, and at the moment defendant Antonio Bonilla explained to Lic. E. L. Belén Trujillo that the truth of the matter was that he had previously paid for the aforesaid farm the sum of $33,000, adding that of those $33,000, $16,000 belonged to Comulada and the $17,000 which the note represented, belonged to Alvarado.

"10. The court concludes that in spite of what was recorded in deed No. 1 executed before Lic. E. L. Belén Trujillo on April 26, 1954, the truth is that the actual transaction between the parties consisted in the sale of the property and the improvements to Antonio Bonilla for the sum of $33,000, price agreed upon between Bonilla and Alvarado, of which sum $16,000 corresponded to Demetrio Comulada and $17,000 to Andrés Alvarado. These last $17,000 would be paid by Bonilla to Alvarado within the term of 6 months, with interest at the annual rate of 8 per cent and would be guaranteed by a first mortgage on a farm which belonged to defendant Bonilla, located in Arecibo, whereupon defendant Antonio Bonilla bound himself to execute said mortgage and to deliver the note for $17,000 which was going to be issued and was actually issued, together with the deed of sale by means of the aforesaid Deed No. 2. It is stated that pursuant to the aforesaid agreement of option signed by Demetrio Comulada and plaintiff Andrés Alvarado, while the option granted to the latter remained effective, Comu-

lada did not have the right to receive for the property more than the agreed $16,000.

"11. In noncompliance with the agreement, defendant Antonio Bonilla never recorded the mortgage note for seventeen thousand dollars and never delivered it to plaintiff Andrés Alvarado; on the contrary, on June 25, 1954 he required Notary E. L. Belén Trujillo to cancel it informing him that on that same day he would go to Andrés Alvarado's home to pay him the debt which it represented, showing him a sum of money. Neither on that occasion nor at any other subsequent time, defendant paid plaintiff the amount of $17,000 agreed upon.

"12. On August 9, 1954 when plaintiff Andrés Alvarado went to get his note for $17,000 at the office of Lic. E. L. Belén Trujillo, the latter informed him the aforesaid facts, and then plaintiff Andrés Alvarado left for Arecibo to see Antonio Bonilla. Two days later, in view of the allegation of defendant Antonio Bonilla that the note had not been cancelled, Lic. E. L. Belén Trujillo had to show the deed of cancellation to Andrés Alvarado and Antonio Bonilla when these gentlemen called at the office of the aforesaid notary, whereupon defendant Bonilla admitted the cancellation of the note to plaintiff.

"13. On subsequent occasions there were conversations between the parties in which plaintiff Andrés Alvarado claimed the payment of the sum owed by defendant Antonio Bonilla and the latter, always accepting the existence of the debt, suggested various kinds of arrangements.

"14. At the beginning of September 1954, Mr. and Mrs. Alvarado, Demetrio Comulada, Antonio Bonilla, José C. Orihuela, Eduardo Dávila, Mr. Rafael Hernández Matos, and Andrés Alvarado, Jr. were in the office of Lic. E. L. Belén Trujillo, and after comparing two survey plats which had been made of the farm in question, one of them prepared by engineer José C. Orihuela and the second by engineers Andrés Alvarado Jr., Pedro Cabezudo Pérez, Benjamín Duchesne Landrón, and Luis Samuel Piñero, and of an extensive consideration as to a possible transaction between the parties, defendant Antonio Bonilla accepted to pay plaintiff Andrés Alvarado the sum of $14,500, binding himself to deliver within a few days to Andrés Alvarado the sum of $8,000 for a transaction which the latter had pending, and the remainder on future dates.

"15. On September 9, 1954, plaintiff Alvarado was notified by Eduardo Dávila, an employee of defendant Bonilla, that the latter, Bonilla, was coming next day to pay him the sum of $14,500 agreed upon. Early in the morning of September 10, plaintiff left for Arecibo with his wife and the aforesaid Eduardo Dávila, whom they picked up in Cataño, in order to make sure that Bonilla paid him on that same day, so that Alvarado could complete on that same day a certain sale transaction of a farm belonging to Esther Vélez. On that occasion Alvarado met Bonilla in his garage in Arecibo, and Bonilla assured him that he would pay that debt on the same afternoon in his house in Río Piedras, giving him as security a check in his name for $3,000 instructing him not to cash it because he was going to give him the money agreed upon in a certified check.

"16. In the evening of that same day, that is, September 10, 1954, Esther Vélez, Mr. and Mrs. Alvarado, Mr. and Mrs. Bonilla, met at the residence of plaintiff Andrés Alvarado. Esther Vélez and Mr. Alvarado were to conclude the sale of a property belonging to the former and Mr. Alvarado had promised to pay Esther Vélez the eight thousand dollars which he owed from the sale, with the money that defendant Bonilla had promised to bring in compliance with the above-mentioned transaction. Bonilla brought on that occasion a certified check for the sum of $3,000, and various uncertified personal checks which expired on future dates, which together with the certified check amounted to $8,000; he gave them to Mr. Alvarado who in turn gave them to Esther Vélez. Esther Vélez did not accept this form of payment and returned the checks to Alvarado, who in turn returned them to Antonio Bonilla, whereupon an argument arose between Alvarado and Bonilla concerning the claim of payment of the debt by the former, and the failure of Bonilla to fulfill his part of the agreement.

"17. From then on defendant Bonilla refused to pay plaintiff Andrés Alvarado the sum owed by him which is the object of the present claim." (Tr. Ev. 3 to 10.)

By the first assignment it is argued that the trial court erred in refusing to eliminate the testimony of Lic. E. L. Belén Trujillo and of Mr. Rafael Hernández Matos and in admitting that of Martina Romero de Alvarado since they

are contrary to law "because (a) they contravene the provisions of § 25 of the Law of Evidence (32 L.P.R.A. § 1668) effective in Puerto Rico, (b) they violate the universally accepted rule which determines that facts or circumstances tending to establish a transaction which has not been consummated should not be admitted as evidence, and (c) in permitting Mr. Rafael Hernández Matos, to testify despite our objection, (p. 35) that appellant Bonilla accepted before him to have promised to pay Alvarado $17,000 'by waiver which he had made of the right of option which he had over the farm,' and besides, for the improvements which he had introduced."

As suggested in the assignment itself defendant-appellant did not object timely to any of the three testimonies and cross-examined all these witnesses. The request to eliminate the testimony of Lic. Belén Trujillo was made in writing after the latter had testified. As to the testimony of Mr. Hernández Matos, objection was made as to the part related with the waiver of the option and as to Mrs. Alvarado, she testified without objection on the facts until an exception was taken on the basis of the inadmissibility of the evidence on compromise. Appellant admits this, but alleges that he did not have to object in time because the rule of "parol evidence" is a rule of substantive law, and not a rule of evidence.

We shall not stop to decide whether or not appellant timely objected to the admission of these three testimonies, nor whether the admission of extrinsic evidence to vary the terms of a written contract is a rule of evidence or of substantive law, or whether appellant waived his objection since we believe that the evidence in the case at bar was admissible.[1] The testimonies objected to tended to

---

[1] In *Clabaguera* v. *Espéndez*, 61 P.R.R. 667, we stated that there is a conflict of authority with regard to whether the rule dealing with the admission of extraneous evidence to vary the terms of a written contract is to be considered as a mere rule of evidence or one of substantive law, but apparently the weight of authority is to the effect that unless objections and exceptions are taken to the admission of such

prove, as the trial court concluded, that in spite of the fact that in the aforesaid deed of sale No. 1, Alvarado appeared as selling the improvements to Comulada for $5,000, thereby waiving his right of option, the truth is that he had agreed to sell said improvements to appellant Bonilla for the sum of $17,000, and what was stated in the aforesaid deed was a simulation.  In other words, these testimonies tended to prove the actual transaction between the parties.  Section 25 of the Law of Evidence (32 L.P.R.A. § 1668), does not prevent this as we have repeatedly decided.  In the case of *Ramírez* v. *Ramírez*, 65 P.R.R. 510, citing those of *Ochoteco* v. *Córdova*, 47 P.R.R. 522, *Morales* v. *Franco*, 44 P.R.R. 63 and *Puig* v. *Sotomayor*, 55 P.R.R. 242, we stated that the parol evidence rule can not be used by the parties to suppress the truth about a transaction nor to preclude a party from proving that a certain written agreement is merely a simulation.  Although simulation should not be fostered, the one which was recorded in the deed, did not have an illegal or harmful purpose, the explanation being acceptable, that it was so effected in order to facilitate the transaction between the parties.

In *Rossy* v. *Super. Ct.; Heirs of Lloréns, Ints.*, 80 P.R.R. 705, we stated the following on p. 724: "Furthermore, there is no question that it would be proper to admit evidence showing that the consideration set forth in deed No. 42 of October 29, 1919, or stated in the private agreement of like date, was not in fact what induced the parties to make those contracts.  Nor does the rule which excludes extrinsic evidence to controvert or vary the terms of a written agree-

evidence the question can not be raised for the first time on appeal.  See also, *Morales et al.* v. *Díaz et al.*, 24 P.R.R. 691 where, citing the cases of *Belber* v. *Calvo*, 16 P.R.R. 342; *People* v. *Alvarado*, 19 P.R.R. 830 and 30 Cyc. 1939–1940, it is held that even if inadmissible extrinsic evidence were admitted, the court was entitled to regard it as no evidence, and *Fernández* v. *Rodríguez*, 56 P.R.R. 389, where we ruled on the admissibility of the evidence in spite of the fact that there was no timely objection.  In *Heirs of Marrero* v. *Santiago*, 74 P.R.R. 763, it was stated that assuming that the testimony had not been admissible, defendants waived the question they raised when cross-examining at length.

ment preclude proof to show what was the real transaction between the parties, even though such transaction appears to be different from that stated in a public or private instrument. (Citations.)" See, also, *Bigas* v. *Monforte*, 76 P.R.R. 289.

██ Nor do we agree with appellant in stating that the testimonies of Lic. Belén Trujillo, Mr. Hernández Matos, and of Mrs. Alvarado tended to establish that defendant appellant attempted to compromise with Alvarado a debt of $17,000 for $14,500, and that since it dealt with an offer of compromise said evidence was inadmissible pursuant to the doctrine established in the case of *People* v. *Central Cambalache*, 59 P.R.R. 59, to the effect that the offer to compromise made by one of the parties produces no legal effect whatever and can not be introduced in evidence against the other party, if the latter has not accepted it. What the evidence shows is that it concerns a perfect contract of compromise with which defendant did not comply later, therefore, the doctrine invoked by appellant is not applicable. Once said contract had been violated, the creditor could sue for the amount of the original debt. This is so, because the noncompliance with or breach of the terms of the contract of compromise, even supposing that there was a novation, produced its resolution and consequently it ceased to exist. *Riera* v. *Macías de Riera*, 42 P.R.R. 560; *Heirs of Escalera* v. *Barreto*, 81 P.R.R. 580.

Appellant believes that the trial court also erred in admitting evidence on the waiver made by plaintiff Alvarado of his right of option to the sale of the property, as part of the $17,000 which appellee agreed to pay. His contention is based on the ground that such a question was not raised in the pleadings. The objection was made against that part of the testimony of Mr. Rafael Hernández Matos respecting the statements made by Bonilla in the office of Lic. Belén Trujillo. The witness testified that he had asked Bonilla why he had cancelled the note for $17,000 and that

Bonilla answered that the farm had a lesser area than what was recorded in the deed and that Comulada had hidden from him the fact of a previous partial condemnation of that farm and that "although he realized that the farm was of considerable worth, he had a right to a reduction from the $17,000 which he promised to pay Alvarado because of the waiver he had made of his right of option on the farm, and also because of the improvements which he had carried out in the farm."

■ The evidence was admissible. Defendant Bonilla's theory was that he bought the farm from Comulada for the price of $16,000 and that he owed nothing to plaintiff Alvarado. The testimony of Mr. Justice Hernández Matos contains an admission of Bonilla to the effect that the latter had promised to pay Alvarado $17,000. That admission was evidence against Bonilla pertinent to the question raised by the allegations. Whether or not Alvarado's waiver of his right of option was part of the consideration of the contract, did not make the evidence inadmissible, for even if that fact had not been alleged, Rule 15 (b) of those of Civil Procedure [2] invoked by plaintiff when the objection to the evidence was being discussed, permitted its admission and even if he failed to amend the pleadings, it would not affect the result of the trial respecting that issue. On the other hand we believe that the admission of such evidence did not prejudice defendant's defense on the merits.

In the second assignment of error appellant maintains that the judgment rendered by the trial court is contrary to law and to the evidence because: (1). it was not proved that Comulada had not bought and paid for the improvements to plaintiff-appellee, as stated in deed No. 1 executed before Notary Belén Trujillo on April 26, 1954 where the latter confessed having sold and received their price; (2) it. was not established (independently of the alleged transaction for $14,500) that appellant Bonilla promised to

---

[2] Now Rule 13.2 of Rules of Civil Procedure.

pay appellee Alvarado $17,000 or any other sum for the alleged improvements; (3) if it were understood as proved that appellant promised to pay appellee $33,000 for the farm, this obligation never had value or effect because (a) Alvarado, in negotiating with Bonilla sold him a farm which was not his, and (b) in case it were his, the one he sold him and tried to give him, was a different one from the one he allegedly possessed; (4) if appellant actually agree with appellee to pay the improvements in the farm by means of a note to the bearer for $17,000, that obligation was extinguished or modified by novation, when by reason of the difference to the area of the farm, Alvarado agree to receive, and Bonilla accepted to pay $14,500, without any interest or collateral whatsoever, $8,000 on September 10, 1954 and $6,500 without expiration date, and (5) appellee Alvarado has not given Bonilla the improvements he allegedly sold him, and he has taken hold of the farm depriving appellant of its possession in spite of the fact that the latter made a down payment of $5,000 to the former and legitimate owner of the farm Demetrio Comulada.

The alleged grounds under Nos. (1) and (2) constitute an attack on the weighing of the evidence. There is substantial evidence in the record to sustain the conclusion of the trial court to the effect that Alvarado did not sell the improvements to Comulada but instead that he sold them to Bonilla for $17,000. This is specially so, if it is considered that we have already decided that the testimonies of Belén Trujillo and of Mr. Justice Hernández Matos, and of Mrs. Romero Alvarado were admitted in evidence to prove the actual transaction made by the parties. The conflicting evidence as to that fact was decided against defendant. His contention can not prosper.

Ground No. 3 stems from an erroneous premise. Alvarado did not sell to Bonilla a farm which was not his. It was Comulada who sold the farm. Alvarado merely sold the improvements which he had made in said farm. Defendant was

bound to pay $33,000 for the farm, and from that sum, by agreement between the parties, $17,000 corresponded to Alvarado as the value of the improvements. It is also incorrect to state that Alvarado sold and accepted to deliver defendant a different farm from the one he said he owned. Bonilla bought for a lump sum, but before concluding the transaction, he inspected the farm which Alvarado possessed as lessee.

We have already disposed of the error assigned in No. 4 when we decided that since Bonilla did not comply with his obligation in the contract of compromise, Alvarado could presume its rescission and proceed to collect the price of the improvements agreed upon in the original sale contract.

■ Neither was the error assigned under No. 5 committed. Bonilla did not pay Alvarado the price of the improvements, and pursuant to the provisions of § 1335 of the Civil Code (31 L.P.R.A. § 3815) the vendor has no obligation to deliver the thing sold, if the vendee has not paid the price or if a period for the payment has not been fixed in the contract.[3] See *Ramos v. Avilés*, 58 P.R.R. 727.

The third assignment of error is as follows:

"The award of payment of interest, introduced in the original judgment, by the amendment of July 23, 1958, is erroneous and contrary to law, and if the judgment appealed from is not reversed, it should be modified by eliminating said pronouncement."

■■ The error was committed. It is true that Bonilla did not pay Alvarado the price of the sale of the improvements within the term agreed upon, but it is also true that the vendor has not delivered the thing sold to the vendee, but on the contrary, he has continued to enjoy it since the date of the sale contract. We would condone an injustice

---

[3] It should be remembered that although a term was fixed for the payment of the improvements, within the contract of compromise, plaintiff presumed it to be rescinded and that the complaint is based on the original contract and that Bonilla did not pay the price at the time of the contract nor in the date fixed in the mortgage note.

if pursuant to § 1083 of the Civil Code we were to decide that Bonilla was in default with the consequences pointed out in § § 1054 and 1061 of the same Code, for in that case Alvarado was unjustly enriching himself at the expense of Bonilla.[4] We had adopted this rule in the case of *Trelles* v. *Suárez*, 49 P.R.R. 536. After citing on p. 539 a commentary from MANRESA to § 1053 of the Spanish Civil Code in which he cites the case law rule to the effect that it is not just that a party would profit by the thing received and also by that which he is bound to deliver, which is the reason why the purchaser who did not pay the price, after receiving the thing must pay interest for delay, we stated: "The doctrine laid down by the Supreme Court of Spain affords us a standard by which to interpret the true meaning of section 1053 in connection with section 1061. If it would not be just for the purchaser to profit by the thing received and also by that which he is bound to deliver, it would not be just either for the vendor to profit by the thing sold and by the interest on any amount which the purchaser might be bound to pay to him. Were the vendor permitted to have the enjoyment of both things, he would be unjustly enriching himself at the expense of the purchaser." We cannot overrule now such a basic principle of justice.

In the fourth assignment appellant contends that the

---

[4] Sections 1053, 1054, and 1061 of the Civil Code (31 L.P.R.A. § § 3017, 3018 and 3025) provides:

"Section 3017. Default; demand of creditor

"Persons obliged to deliver or to do something are in default from the moment when the creditor demands the fulfilment of their obligation, judicially or extrajudicially.

"However, the demand of the creditor, in order that default may exist, shall not be necessary:

"1. If the obligation or law declares it expressly.

"2. If by reason of its nature and circumstances it may appear that the fixing of the period within which the thing was to be delivered or the service rendered was a determinate cause to constitute the obligation.

"In mutual obligations none of the persons bound shall incur default if the other does not fulfill or does not submit to properly fulfill what is incumbent upon him. From the time one of the per-

trial court erred in failing to sentence appellee to pay him rentals for the use of the farm at the monthly rate of $106 starting from April 26, 1954 and until he delivers it to him.

Independently of the procedural aspects involved in this contention [5] and concentrating on the merits of the error which was raised, appellant maintains that Comulada transferred the farm to Bonilla with all its inherent and accessorial items, including the improvements and consequently the right to collect the rental which Alvarado paid Comulada, because pursuant to the provisions of § 1400 of the Civil Code (31 L.P.R.A. § 3905), the vendee substitutes the vendor in all his rights and actions.

Appellant is wrong. In the first place the argument is based on the premise that Comulada sold the farm to Bonilla with its improvements for $16,000 but that premise vanishes once we affirm the finding of the trial court to the effect that Comulada sold the farm to Bonilla and Alvarado in turn sold the improvements to the latter. Aside from that fact, this contention faces two difficulties. The first one is that the improvements were not limited to the house but that they

sons obligated fulfills his obligation the default begins for the other party.—Civil Code, 1930, § 1053.

"Section 3018. Fraud, negligence, or delay in fulfilling obligation

"Those who in fulfilling their obligations are guilty of fraud, negligence, or delay, and those who in any manner whatsoever act in contravention of the stipulations of the same, shall be subject to indemnity for the losses and damages caused thereby.—Civil Code, 1930, § 1054.

"Section 3025. Interest as indemnity for nonpayment of money

"Should the obligation consist in the payment of a sum of money, and the debtor should be in default, the indemnity for losses and damages, should there not be a stipulation to the contrary, shall consist in the payment of the interest agreed upon, and should there be no agreement, in that of the legal interest.

"Until another rate is fixed by the Government, interest at the rate of six per cent per annum shall be considered as legal.—Civil Code, 1930, § 1061."

[5] When defendant Bonilla finally presented his evidence he requested the court to consider his counterclaim as amended in the sense of claiming as the only damages, the monthly rentals that plaintiff should have paid Comulada. The counterclaim was dismissed.

comprised certain investments on the land itself which could not be considered separately, and since Bonilla did not pay the price of the improvements, Alvarado was not bound to deliver them. The second one is that there is a lack of evidence in the record concerning the reasonable value of the use of the farm, excluding the improvements. In the absence of evidence of the damages, an award for such damages did not lie.

In view of the foregoing the judgment appealed from will be modified pursuant to the terms of this opinion and as thus modified it will be affirmed.